UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-cr-20167-JLK

UNITED STATES OF AMERICA,

v.

DUSTIN LEE MAYES,

    Defendant.
_____/

**ORDER GRANTING THE GOVERNMENT'S
OBJECTIONS TO REPORT AND RECOMMENDATION**

THIS MATTER comes before the Court upon the Government's Objections (DE 50), filed on January 31, 2022, to Magistrate Judge Jacqueline Becerra's Report and Recommendation ("R&R") (DE 47), entered January 23, 2022. The Court has also considered Defendant's Response filed on February 7, 2022. DE 54.

### I.    BACKGROUND

By way of background, a one-count indictment (DE 1) was filed on March 18, 2021, charging Defendant, DUSTIN LEE MAYES, with possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On April 1, 2021, Defendant was arrested (DE 8) and subsequently ordered to be detained prior to trial (DE 13). On October 15, 2021, Defendant filed the underlying Motion (DE 29) seeking to suppress both the firearm and cartridges discovered during a traffic stop and the statements Defendant made following his arrest.

The R&R recommends that Defendant's Motion to Suppress Physical Evidence and Statements be granted. Magistrate Judge Becerra reasoned that Officer Rafael Dominguez, who conducted the traffic stop of the car in which Defendant was a passenger, lacked reasonable suspicion for the stop, and therefore the gun, ammunition, and Defendant's statements must be

suppressed. R&R at 9–18. Alternatively, the Magistrate Judge recommends that if the District Court does not adopt that the officer lacked reasonable suspicion, then Defendant knowingly and voluntarily waived his *Miranda* rights after the officer read them to him. *Id.* at 18–20.

On November 18, 2021, Magistrate Judge Becerra held an evidentiary hearing where the Government called three witnesses: Officer Rafael Dominguez, Officer Seth Jordan, and Ms. Tracy Michael. DE 40. Officer Dominguez conducted the traffic stop during which Defendant was searched, Officer Jordan responded to the shooting location and arrived at the traffic stop as backup, and Ms. Michael is a communications supervisor. All three witnesses were employees of the Miami Springs Police Department. *Id.* The Government objects to the R&R's finding that there was no reasonable suspicion but does not object to the conclusion that Defendant knowingly and voluntarily waived his *Miranda* rights. *See* DE 50.

## II.   GOVERNMENT'S LEGAL OBJECTIONS

The Government objects to the Magistrate Judge's finding that Officer Dominguez lacked reasonable suspicion. Specifically, the Government argues that the cases relied on in the R&R are distinguishable from this case, and caselaw shows that reasonable suspicion existed when Officer Dominguez pulled over the vehicle in which Defendant was a passenger. *Id.* Further, the Government argues that the R&R misapplied the reasonable suspicion standard and did not consider the dangerousness of the situation which "lessens the level of suspicion" needed for a *Terry* stop. *Id.* The Court agrees that the factors surrounding the traffic stop of Defendant are distinguishable from the cases cited in the R&R. For the reasons stated herein and based on the factual findings in the R&R, the Court concludes that Officer Dominguez had reasonable suspicion to conduct a traffic stop.

The R&R found "persuasive" and relied heavily on *United States v. Jaquez*, 421 F.3d 338 (5th Cir. 2005) based on it having "very similar facts" to the instant case. R&R at 14. In *Jaquez*, the officer making the traffic stop heard via radio dispatch that "a red vehicle" was involved in a shooting and the officer pulled the vehicle in question over 15 minutes after the radio call. *Jaquez*, 421 F.3d at 341. The *Jaquez* court held that the officer making the traffic stop lacked reasonable suspicion because "[e]xcept for its color, [the officer] did not have any particular information about the vehicle, such as its make or model, or any description of its occupant(s)." *Id*.

*Jaquez* is distinguishable from the instant case because Officer Dominguez had more information than the officer in *Jaquez* since "Officer Dominguez knew the type of car to look for (an SUV), found it only a minute after the BOLO [be on the lookout radio call], and did not see any other cars nearby matching the 'gray' or 'SUV' description." Obj. at 9. These differences are important because a reasonable suspicion analysis is made on a case-by-case basis and requires a consideration of the "totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

At the evidentiary hearing, there was contradiction over whether Officer Dominguez knew the make of the car, a Ford. The Magistrate Judge found Officer Dominguez to be a credible witness and stated in her R&R that based on his testimony, Officer Dominguez received information over the radio "that the suspect was in a gray SUV" but no other information regarding the make and model of the vehicle. R&R at 10. According to Officer Jordan, who responded to the shooting at the Runway Inn, a witness stated that Defendant was traveling in a Ford going eastbound, but the R&R makes clear that the Magistrate Judge reviewed the radio dispatch recording and found as a fact that "gray SUV" was transmitted so that is all Officer Dominguez

could have known. *Id.* at 10–11. Based on the R&R's factual findings, even if Officer Dominguez only heard "gray SUV" he had more information than the officer in *Jaquez*. The Court accepts and affirms the Magistrate Judge's ruling on credibility. However, *Jaquez* would be controlling if the Officer knew only the color of the vehicle in question, not if the Officer had additional information as he did here.

Additionally, the R&R compares the instant case to a number of other Eleventh Circuit cases. However, in each of these other cases, the officer conducting the traffic stop had more information about the suspected vehicle than Officer Dominguez did here. *See United States v. Jones*, 827 Fed. Appx. 946 (11th Cir. 2020) (finding that the arresting officer knew a "silver or gray" vehicle with a "J" in the license plate was involved and that the driver was a Black male who appeared animated was enough for reasonable suspicion); *see also United States v. Webster*, 314 Fed. Appx. 226, 227–29 (11th Cir. 2008) (finding the description of "a dark-colored vehicle" with "Down South Customs" written on the rear window was enough to raise reasonable suspicion). These cases demonstrate the type of information and sufficient particularity needed to create a reasonable suspicion, but they do not show that the information known here, "gray SUV" is insufficient.

Instead, the Government argues that the Court should look to *Burgess*, where the Seventh Circuit found reasonable suspicion when "the officers had both a specific car color and a street location to zero in on[.]" *United States v. Burgess*, 759 F.3d 708, 711 (7th Cir. 2014). In *Burgess*, the defendant was stopped about a mile from the location reported, or "a distance and on a street one might reasonably expect the shooter's vehicle to have traveled during the time that had elapsed[]" and "because of the light traffic late on that Sunday night, there was a good chance that seeing [defendant's] car at that time and place was more than a coincidence." *Id.*

The R&R addressed the vicinity factor and found the fact that the vehicle was located a short distance from the shooting within minutes of the BOLO was not favorable because the exact timeline was not known. R&R at 16. This is because "there is no way to know, nor is there evidence on exactly how much time after the defendant departed in that car and when the witness gave that description." *Id.* However, the proximity of the vehicle to the shooting site should not be overlooked. Even the R&R states that the time and vicinity of the stop are "not irrelevant." *Id.* at 17. The R&R found that Officer Dominguez testified he first saw the vehicle three to four blocks from the shooting and the closeness to the sight of the shooting weighs in favor of reasonable suspicion. *Id.* at 11 n.4. Therefore, the Court considers as a factor the time and vicinity of the stop when considering reasonable suspicion.

Defendant, in his Response, points out that when comparing *Burgess* to the instant case, "the record here is inconclusive" about the time that elapsed between Officer Dominguez receiving the radio call and seeing the vehicle in which Defendant was traveling. Resp. at 7. In *Burgess*, "[j]ust over four minutes had passed from the initial dispatch about gunshots to the officers' report that Burgess was in custody." *Burgess*, 759 F.3d at 709. While the elapsed time is uncertain from when the suspect left the Runway Inn to when Officer Dominguez saw the car, Officer Dominguez testified that he saw the car within minutes of hearing the radio call. R&R at 11. One of the factors the *Burgess* court used was "the short lapse of time between the dispatches and the stop" and found that the officers knew about the color and proximity of the vehicle "from hearing the dispatches alone." *Burgess*, 759 F.3d at 709–11. Similarly, in this case, there was a short amount of time, only minutes, between the dispatch and the stop, and Officer Dominguez also only knew the information broadcasted over the radio, but this information as to the type and location of the vehicle was enough to provide a reasonable suspicion for him to rely on to conduct a traffic stop.

Furthermore, the Government argues that in *Burgess*, the court "observe[d] the dangerousness of the situation facing the officers and the public" and applied a "sliding scale approach under which greater danger requires less suspicion for reasonable search," which the R&R neglected to consider. Obj. at 5–6; *Id.* at 710 (citing *United States v. Goodwin*, 449 F.3d 766, 769, 771 (7th Cir. 2006)). Defendant distinguishes the "dangerousness" of the situations. *Id.* The defendant in *Burgess* allegedly fired shots from the car, whereas Defendant here is accused of shooting at a hotel and subsequently leaving in a vehicle. *Id.* While the R&R does not address dangerousness (Defendant points out that the Government did not raise this at the evidentiary hearing) this is only one factor the Court looks at when evaluating the totality of the circumstances involving the stop. Resp. at 7 n.8.

The Government also relies on an Eighth Circuit case, *United States v. Daniel*, where the court found there was reasonable suspicion when the officer stopped defendant "within minutes of the dispatch" after hearing a radio report of an armed robbery at a particular location and that the suspect was in a "white Suburban." *United States v. Daniel*, 887 F.3d 350, 355 (8th Cir. 2018). Defendant argues that *Daniel* is not similar because Officer Dominguez only knew the type of vehicle, an SUV, not the model like a "Suburban." Resp. at 8. The importance of the type of vehicle versus model was stressed at the hearing when Magistrate Judge Becerra stated that "if what's on the radio is gray *Ford* SUV heading eastbound and [Officer Dominguez] heard that, I think the government's got an entirely different case." *Id.* (citing DE 46 at 99) (emphasis added). Of course, the make and model of a vehicle is more specific than just a color, but the factual findings here indicate that Officer Dominguez knew the type of vehicle involved, still more specific than just color.

6

The Court "look[s] at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). Officer Dominguez testified that between 3:00 and 4:00 in the morning, he heard a radio call description of "gray SUV" and saw the vehicle Defendant was traveling "within minutes" and only "three to four blocks" from the shooting. R&R at 11. The circumstances here, dangerousness of the reported crime, the short lapse of time between the dispatches and the officer's stop, the proximity of the stop to the reported shooting, the color and type of the car—albeit not the model—and the light traffic late at night all support a finding that reasonable suspicion existed. This is more particular information than the officer in *Jaquez* had and is more akin to the information had by law enforcement in *Burgess* where reasonable suspicion was found.

The R&R additionally analyzed the Defendant's Fifth Amendment *Miranda* claim if the Court did not adopt the Magistrate Judge's reasoning that the traffic stop was without reasonable suspicion and found that "Defendant knowingly and voluntarily waived his Miranda rights after Officer Jordan read them to him." R&R at 20. The Government did not object to the R&R's conclusion regarding the *Miranda* waiver and asked the Court to adopt its finding that Defendant knowingly and voluntarily waived his rights. Obj. at 4 n.2, 15. Even though there is no objection, the Court reviews legal conclusions *de novo. See Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994). The Court finds that Magistrate Judge Becerra's R&R accurately states the facts and law regarding *Miranda* and therefore this Court adopts her reasoning and finds Defendant waived his rights before making statements to law enforcements.

## II. GOVERNMENT'S FACTUAL OBJECTIONS

1. <u>Direction of the Defendant's Getaway Car</u>

The Government objects to the R&R's finding in a footnote that "it does not appear that the car would have been traveling eastbound when Officer Dominguez first saw it, as he testified that the car was three to four blocks from the Runway Inn, exiting East Drive and then went eastbound on 36th Street." R&R at 11 n.4. Officer Dominguez testified that he first spotted the vehicle "about four blocks" from the Runway Inn and "it was doing a left from East Drive, going eastbound on Northwest 36th Street" while he was traveling in the opposite direction, going west on 36th Street. DE 50 at 10 (citing DE 46 at 74). Defendant agrees that Officer Dominguez first observed the vehicle that he ultimately stopped as it was driving eastbound. DE 54 at 2. The Magistrate Judge found Officer Dominguez to be credible. R&R at 11. Therefore, based upon his testimony, the Court finds that the first time Officer Dominguez saw the vehicle going eastbound on Northwest 36th Street.

2. <u>Description of the Getaway Car on the Radio</u>

The Government also objects to the R&R's finding that Officer Dominguez only heard the description "gray SUV," and not "Ford" or heading "eastbound" on 36th Street. Obj. at 11. Defendant argues that this argument by the Government was rejected at the hearing and there is testimony that Officer Dominguez did not hear "gray Ford SUV." Resp. at 2. Regardless, whether Officer Dominguez heard "Ford" in addition to SUV as a descriptor, it does not alter the Court's legal conclusion that there was reasonable suspicion for the traffic stop.

3. <u>Timing of the Encounter</u>

The Government objects to the R&R's conclusion that "the time between when the shooting was reported and the time the car was first seen by Officer Dominguez" could be "as long

8

as one hour." Obj. at 12 (citing R&R at 17 n.8). The Government calls this finding "speculative" especially given the R&R's finding that "the police radio recording . . . contains an approximate seven-minute interval between a call to all units to prepare to respond to the shooting and Officer Dominguez locating the vehicle." *Id.* at 13 (citing R&R at 8).

The Government secondly objects to the implication that there was not enough time for the events to occur as the officers testified based on the number of events that happened between the hotel clerk calling 911 and Officer Dominguez stopping the vehicle. The fact remains that based on witnesses the Magistrate Judge found to be credible, Officer Jordan testified that Officer Dominguez located a gray Ford Expedition "[w]ithin minutes . . . [l]ess than ten [minutes]" after the radio call was broadcasted. R&R at 5; DE 46 at 19:22. Additionally, Officer Dominguez testified that he saw the car within minutes of hearing the radio call. R&R at 11. The Court accepts the timeline outlined in the R&R and the credible testimony of Officer Dominguez. However, when examining the reasonableness of Officer Dominguez's stop, in this particular case and the time between the radio call and the stop, the testimony supports a finding that reasonable suspicion existed.

Accordingly, it is **ORDERED, ADJUDGED, and DECREED** that:

1. The Government's Objections to Magistrate Judge Becerra's Report and Recommendation **(DE 50)** be, and the same are, hereby **GRANTED**;

2. Magistrate Judge Jacqueline Becerra's January 23, 2022 Report and Recommendation (DE 47) be, and the same is, hereby **REJECTED IN PART, AFFIRMED IN PART, and ADOPTED IN PART** as an Order of this Court as to Defendant's waiver of *Miranda* rights; and

3. Defendant's Motion to Suppress Physical Evidence and Statements **(DE 29)** is **DENIED.**

**DONE and ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 7th day of June, 2022.

*[signature]*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc: **All counsel of record**
**Magistrate Judge Jacqueline Becerra**